T.C. Memo. 2009-11


UNITED STATES TAX COURT


EDWARD R. VOCCOLA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.  7699-05, 14888-05,  Filed January 15, 2009.
             12005-06.


Edward R. Voccola, pro se.

Nina P. Ching, for respondent.


MEMORANDUM OPINION


NIMS, Judge:  This matter is before the Court on
respondent's motions for summary judgment under Rule 121 and
motions to dismiss for lack of prosecution under Rule 53.  Unless

otherwise indicated, all Rule references are to the Tax Court

Rules of Practice and Procedure, and all section references are

to the Internal Revenue Code in effect for the years in issue.

Respondent determined deficiencies in and an addition to tax

and penalties on petitioner's Federal income tax as follows:

| Year | Deficiency | Penalty Sec. 6663 | Addition to Tax Sec. 6651(a)(2) |
|------|------------|-------------------|--------------------------------|
| 1996 | $56,715 | $38,284.50 | $14,178.75 |
| 1997 | 110,501 | 82,875.75 | -- |
| 1998 | 122,762 | 92,071.50 | -- |
| 2001 | 87,451 | [1]65,588.25 | -- |
| 2002 | 147,966 | 110,974.50 | -- |
| 2003 | 22,519 | 16,889.25 | -- |

[1]Respondent originally determined a $17,490.20 sec. 6662(a) accuracy-related penalty in the notice of deficiency. The Court granted respondent permission to file an amendment to the answer to the amended petition, whereby respondent asserted the sec. 6663 penalty.

The issues for consideration are: (1) Whether petitioner

underreported income during the years in issue; (2) whether

petitioner is liable for the addition to tax for failure to

timely pay tax under section 6651(a)(2); and (3) whether

petitioner is liable for fraud penalties under section 6663.

We will grant respondent's motions for summary judgment as

to the deficiencies and fraud penalties, rendering respondent's

motions to dismiss moot. We will deny respondent summary

judgment on the issue of the addition to tax under section

6651(a)(2).

## Background

These cases are consolidated for purposes of trial, briefing, and opinion and involve deficiencies, an addition to tax, and penalties for the 1996, 1997, 1998, 2001, 2002, and 2003 taxable years. Petitioner was a resident of Massachusetts at the time he filed the petitions in all three cases.

In docket No. 14888-05 respondent sent petitioner a notice of deficiency for the 1996 tax year. Petitioner filed a petition with this Court on August 11, 2005, challenging the determined deficiency and the addition to tax. On August 3, 2006, respondent served a request for admissions on petitioner. Petitioner did not respond. On March 13, 2007, respondent filed a motion for summary judgment on the basis of the deemed admissions of the unanswered request for admissions.

In docket No. 7699-05 respondent sent petitioner a notice of deficiency for the 2001 tax year. Petitioner filed a petition with this Court on April 26, 2005, challenging the determined deficiency and fraud penalty. On December 23, 2005, respondent served a request for admissions on petitioner.[1] On August 3, 2006, respondent served petitioner with a second request for

---

[1]There was some uncertainty at the hearing on respondent's motions for summary judgment as to whether petitioner received all three requests for admissions originally served by respondent. However, petitioner did, in fact, receive copies of the requests enclosed in a letter respondent later sent to petitioner on Feb. 27, 2007, almost 3 full months before the hearing on respondent's motions for summary judgment.

admissions.  Petitioner never responded to either request for admissions.  On April 4, 2007, respondent filed a motion for summary judgment on the basis of the deemed admissions from both requests for admissions.

In docket No. 12005-06 respondent sent petitioner notices of deficiency for the 1997, 1998, 2002, and 2003 tax years. Petitioner filed a petition with this Court on June 23, 2006, challenging the determined deficiencies and fraud penalties.  On August 21, 2006, respondent filed an answer to the petition. Petitioner did not file a reply to respondent's answer.  On October 17, 2006, pursuant to Rule 37(c), respondent moved for entry of an order that the undenied allegations in the answer be deemed admitted by petitioner.  The Court ordered petitioner to file a reply by November 13, 2006,[2] but petitioner never did so. On December 6, 2006, the Court granted respondent's Rule 37(c) motion and deemed admitted the allegations in respondent's answer.  On April 4, 2007, respondent filed a motion for summary judgment on the basis of the deemed admissions of the allegations in the answer.

The Court ordered petitioner to file responses to the motions for summary judgment, but he did not do so.  On May 21,

---

[2]The Rule 37(c) notice was returned to the Court marked "Box Closed - Unable to Forward - Return to Sender", but petitioner received a copy of the order granting the Rule 37(c) motion with respondent's letter of Feb. 27, 2007.

2007, the Court heard respondent's motions for summary judgment, at which time petitioner did not appear and had not filed a Rule 50(c) statement in lieu of an appearance. The cases were consolidated on respondent's oral motion, and respondent filed a motion to dismiss for lack of prosecution in all three cases.

At the hearing, respondent also presented testimony concerning petitioner's fraud. Internal Revenue Service PSP Section Chief Laura Benner (Ms. Benner) testified that petitioner engaged in a pattern of filing his Federal income tax returns early, before Forms W-2, Wage and Tax Statement, were generally issued, and therefore created his own Forms W-2 from various payroll statements in order to do so. On his returns petitioner claimed significant losses on Schedule C, Profit or Loss From Business, to offset Form W-2 wage income. He then filed amended returns to increase and carry back those losses to prior years. However, in order to qualify as a Schedule C trader in securities, a taxpayer is generally required to rely on trading activity as a primary source of income and meet meticulous recordkeeping standards. Petitioner did not qualify as a Schedule C trader in securities because he had substantial Form W-2 income for some of the years in issue and failed to present any of the required mark-to-market accounting. Furthermore, petitioner had been banned from trading securities by the Securities and Exchange Commission, yet he continued to claim

Schedule C losses for 2002 and 2003. In fact, respondent found no evidence of any trading activity by petitioner during those years. Petitioner also engaged in a pattern of claiming unverifiable charitable contribution deductions on Schedule A, Itemized Deductions.

Respondent's motions for summary judgment request that we sustain the deficiencies, addition to tax, and penalties determined in the notices of deficiency. Respondent contends the facts deemed admitted under Rules 37(c) and 90(c) satisfy his burdens of proof as to the deficiencies, addition to tax, and penalties.

The facts deemed admitted under Rules 37(c) and 90(c) are summarized as follows.

Petitioner omitted income and claimed false deductions on his 1996, 1997, 1998, 2001, 2002, and 2003 income tax returns as part of a 10-year pattern of intentionally evading tax.

On March 29, 2000, petitioner was indicted on three counts of tax evasion in violation of section 7201. He was charged with filing fraudulent joint income tax returns for the 1993, 1994, and 1995 taxable years, in that they overstated itemized deductions, reported negative taxable income, and reported a tax liability of zero. He pleaded guilty to all 3 counts, and the U.S. District Court for the District of Massachusetts entered judgment accordingly on December 30, 2000.

On September 10, 2002, petitioner was indicted on 11 counts of securities fraud, 2 counts of falsely representing Social Security numbers, 4 counts of mail fraud, and 1 count of wire fraud. He pleaded guilty to all of the charges.

For the tax years at issue petitioner filed Forms 1040, U.S. Individual Income Tax Return, Forms 1045, Application for Tentative Refund, and Forms 1040X, Amended U.S. Individual Income Tax Return, to claim losses and generate refunds to which he was not entitled for those years.

In June 2002 petitioner filed a late return for the 1996 tax year. He reported taxable income of $42,356 and a tax liability of $9,256. After credits, he reported a tax liability of zero.

On or about December 7, 2000, petitioner filed a late return for the 1997 tax year and reported a tax liability of $107,652. Upon receipt of the return, respondent made math error adjustments under section 6213(b)(1), recomputing petitioner's total tax liability as $110,501.35. Petitioner did not contest these adjustments.

On or about December 11, 2000, petitioner filed a late return for the 1998 tax year. He reported a tax liability of $122,762 and on or about April 30, 2001, received a refund of $63,561.85.

For the 2001 tax year petitioner filed a timely return and reported a tax liability of negative $196,260. On or about May

10, 2002, he filed a Form 1040X, increasing his claimed Schedule C losses and reporting a tax liability of negative $338,625.

For the 2002 tax year petitioner filed a timely return, reporting adjusted gross income of negative $249,398, taxable income of negative $361,292, a tax liability of zero, and an overpayment of $922. He also submitted a Form 1045, seeking to carry back a net operating loss of $249,398 to the 1997 tax year. Respondent accordingly issued petitioner a $95,428 refund for 1997.

On June 5, 2003, respondent received petitioner's amended return for the 2002 tax year. Petitioner decreased his adjusted gross income to negative $435,939 and taxable income to negative $547,783. On or about June 1, 2004, respondent received a second Form 1045, whereby petitioner increased the net operating loss being carried back to the 1997 tax year to $311,479. Respondent accordingly issued an additional refund of $15,073 plus interest of $203.70. Petitioner's carrybacks allowed him to receive refunds of all the tax he had paid for the 1997 taxable year, and he then carried forward the remaining $343,334 of claimed net operating losses to the 1998 taxable year. This resulted in a refund of $122,762 plus interest of $1,659.04.

For the 2003 tax year petitioner filed a timely return and reported adjusted gross income of negative $238,547, a tax liability of zero, and an overpayment of $5,155. Upon receipt of

petitioner's 2003 return, respondent made math error adjustments and recomputed petitioner's adjusted gross income as negative $228,548 and his overpayment as $3,425.  Petitioner did not contest these adjustments.

Petitioner prepared all of the returns and applications for refund himself.  He holds a master's degree in business administration from Temple University Graduate School of Business, a juris doctor degree from Suffolk University School of Law, and a master of laws degree in taxation from Boston University School of Law.  He also has years of work experience as a tax specialist.

Petitioner engaged in a pattern of underreporting his income tax from 1993 to 2003.  He claimed unsubstantiated Schedule A deductions, Schedule C expenses and losses, losses on Schedules D, Capital Gains and Losses, and other deductions and credits on Forms 1040.  Petitioner also claimed he was in the business of being a "trader in securities" using a "mark-to-market" accounting method.  He failed to make timely section 475(f) elections and was not engaged in a Schedule C trade or business as a trader in securities during these years.  In fact, petitioner worked full time as an employee for State Street Bank & Trust Co. from 1994 to 1999.

For the 1996 tax year petitioner understated his tax liability by $56,715.  In calculating his reported tax liability

of $9,256, he deducted an unsubstantiated $3,000 net capital loss.  This deduction stemmed from an alleged $225,138 short-term capital loss carryover from 1995 which he could not substantiate.

Petitioner also overstated his Schedule A itemized deductions by $58,947.  He falsely claimed that he donated "equipment, clothing, books, etc." to a nonexistent St. Vincent DePaul in Hingham, Massachusetts.  Petitioner also claimed other unsubstantiated miscellaneous deductions of $24,728, asserting that he was entitled to a deduction for "income reported for another taxpayer."

On Schedule C petitioner claimed negative $67,406 of "Other income" and expense deductions of $5,400, for a total loss of $72,806.  These expense deductions comprised a $5,000 deduction for legal and professional services and a $400 deduction for office expenses.  Petitioner could not substantiate any of the expenses and did not have a Schedule C business called "Osprey Capital" in 1996, as claimed on his return.

Petitioner's correct tax liability[3] was $57,675.  He claimed, but failed to substantiate, an $8,296 general business credit carryforward.  After an allowed child care credit of $960, petitioner's understatement was $56,715.

_____

[3]Respondent's requested admission incorrectly states that taxable income was $57,675.

For the 1997 tax year petitioner understated his tax liability in the amount of $135,502.[4]  He claimed an unsubstantiated Schedule C loss of $60,127, consisting of "Other income" of negative $30,057 and interest expenses of $30,070.  He also claimed an unsubstantiated total net operating loss carryback of $311,479.  This alleged net operating loss carryback originated from fabricated losses claimed on the 2002 return and the amended 2002 return.

After the carrybacks and carryforwards claimed on his return, petitioner reported taxable income of negative $26,173 and a tax liability of zero.  Petitioner's correct taxable income and tax liability were $374,614 and $135,502, respectively.

For the 1998 tax year petitioner understated his tax liability by $227,331.  Petitioner claimed an unsubstantiated Schedule C loss of $256,371, consisting of negative $245,769 in "Other income" and $10,602 in interest expenses.  Petitioner claimed a total net operating loss carryback of $343,334 which he could not substantiate.  The alleged net operating loss carryback again originated from fabricated losses claimed on the 2002 return and the amended 2002 return.

---

[4]Neither for 1997 nor for 1998, infra, does the understatement coincide with the deficiency, supra, because respondent appears to have determined deficiencies only in the amounts of the refunds received by petitioner.  Respondent did not seek deficiencies for the full amounts of the understatements.

After carrybacks and carryforwards, petitioner reported taxable income of negative $24,417 and a tax liability of zero. Petitioner's correct taxable income was $631,813, and his correct tax liability was $227,331.

For the 2001 tax year petitioner understated his income tax liability by $87,451. He failed to report $229,815 in realized short-term gains from sales of stock and bonds, $2,437 in interest income, $50,293 in Massachusetts State income tax refunds, and $2,024 in unemployment compensation from the Commonwealth of Massachusetts.

Petitioner claimed an unsubstantiated Schedule C net loss of $164,418, but his trading activity during the 2001 tax year was not substantial, frequent, regular, and continuous. He also received Form W-2 wage income of $4,673 from Herb Chambers, Inc. (Herb Chambers).

Petitioner reported a tax liability of negative $196,260 on his 2001 return and negative $338,625 on his amended return. His correct tax liability was $259,410.

For the 2002 tax year petitioner understated his tax liability by $147,966. He failed to report $785,000 in capital gain income, $266 in wage income from Herb Chambers, and $582 in interest income from the Massachusetts Department of Revenue and the U.S. Department of the Treasury.

Petitioner and his former spouse, Joanne P. Voccola (Joanne Voccola), sold their residence in Hingham, Massachusetts, for $1,375,000 on July 17, 2002. They had purchased the property for $340,000 as tenants by the entirety on December 13, 1990. Petitioner, however, failed to substantiate his ownership interest and basis in the property at the time of the sale.

Petitioner also improperly claimed dependency exemptions for his three children during the 2002 taxable year. Petitioner and his spouse divorced in 2002, and Joanne Voccola was granted physical custody of their three children. Petitioner did not attach a Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, to his 2002 return and was not entitled to claim the dependency exemptions.

Petitioner worked as a mortgage broker during the 2002 tax year, earning $5,125 of self-employment income from GMC Mortgage (for which he received a Form 1099-MISC, Miscellaneous Income) but incorrectly reporting it as "other income" on his return. On his amended return he claimed an unsubstantiated Schedule C loss of $450,052, consisting of negative $339,266 of "other income" and $110,786 of unsubstantiated expenses.

On his amended return he reported taxable income of negative $547,783 and a tax liability of zero. His correct taxable income was $750,184, and his correct tax liability was $147,966.

For the 2003 tax year, petitioner understated his income tax liability by $22,519. He failed to report interest income of $4,017 and a prior year's State refund of $350.

Petitioner again claimed dependency exemptions for his three children during the 2003 taxable year. He did not have physical custody of the children and was not entitled to claim said exemptions.

Petitioner reported $77,302 of gross receipts on his Schedule C, but he erroneously reported as Schedule C income $27,112 in wages that he received from Ark Mortgage & Investment Co. (Ark Mortgage). Respondent accordingly adjusted the gross receipts reported to $50,189. Since petitioner's Schedule C self-employment income from Ark Mortgage was actually $52,644, he underreported his Schedule C income by $2,455. Petitioner also claimed various expenses of $60,849 and "other income" of negative $245,000, which he could not substantiate. The total unsubstantiated net Schedule C loss he claimed on the return was $255,660.

Petitioner reported taxable income of negative $245,498 and a tax liability of zero. His correct taxable income was $72,605, and his correct tax liability was $22,519.

Petitioner failed to maintain, or to submit for examination by respondent, complete and adequate books and accounts of his income-producing activities, expenses, and deductions for the years in issue, as required.

## Discussion

Summary judgment may be granted when there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The opposing party cannot rest upon mere allegations or denials in his pleadings and must "set forth specific facts showing that there is a genuine issue for trial."  Rule 121(d).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

The first issue for decision is whether we should grant respondent summary judgment as to the deficiencies for the years in issue.

Respondent's motions for summary judgment are supported by petitioner's failure to answer the affirmative allegations in respondent's answer and requests for admissions.  Where a reply is not filed, affirmative allegations in the answer will be

deemed denied unless the Commissioner, within 45 days after expiration of the time for filing the reply, files a motion that specified allegations in the answer be deemed admitted. Rule 37(c). Facts deemed admitted under Rule 37(c) are considered conclusively established and may be relied on by the Commissioner even when he bears the burden of proof. Baptiste v. Commissioner, 29 F.3d 1533, 1537 (11th Cir. 1994), affg. T.C. Memo. 1992-198.

Similarly, a request for admissions is deemed admitted unless an objection or written answer specifically denying the matter is served within 30 days after service of the request. Rule 90(c); Freedson v. Commissioner, 65 T.C. 333, 334-336 (1975), affd. 565 F.2d 954 (5th Cir. 1978). Facts deemed admitted under Rule 90(c) may satisfy the burden of proving that no genuine issue of material fact exists as to respondent's deficiency determinations and that the Commissioner is entitled to a decision as a matter of law. Marshall v. Commissioner, 85 T.C. 267, 272 (1985).

Respondent alleged in his answer and requests for admissions that petitioner omitted income and claimed false deductions which he could not substantiate for the years in issue. By virtue of petitioner's failure to respond and the Court's granting of respondent's Rule 37(c) motion, petitioner is deemed to have admitted these facts. These deemed admissions satisfy

respondent's burden of proving no genuine issue of material fact exists, and we accordingly will grant respondent summary judgment as to the deficiencies.

The second issue for decision is whether we should grant respondent's motion for summary judgment on the section 6651(a)(2) addition to tax for the 1996 tax year.

Section 6651(a)(2) provides for an addition to tax of up to 25 percent for failure to timely pay the tax shown on the return unless such failure was due to reasonable cause and not willful neglect. Respondent erred when he applied the applicable 25 percent rate to the full amount of the deficiency. Petitioner is not liable for any addition to tax under section 6651(a)(2) because his total tax shown on the return was zero. The tax shown on the return is reduced by the amount of credits which may be claimed. Sec. 301.6651-1(d)(1), Proced. & Admin. Regs. Petitioner's 1996 return showed an initial tax liability of $9,256. He then claimed a child care credit of $960 and a general business credit of $8,296. Since the total tax shown on petitioner's return was zero, there is no amount to which the section 6651(a)(2) addition to tax may be applied.

Although respondent subsequently disallowed the general business credit, this does not render petitioner liable for the penalty. The disallowance creates a deficiency rather than a

nonpayment of tax shown on the return.  In Service Center Advice

200001037 (Nov. 10, 1999), the Commissioner detailed the effect

of reductions of different types of credits:

> For purposes of the Form 1040, <u>U.S. Individual Income
> Tax Return</u>, the "amount shown as tax on the return" is
> the amount of total tax as shown on the line
> immediately above the payments section * * * [line 51
> on 1996 Form 1040].  * * * [Refundable] credits are
> considered "below the line" credits because they are
> all applied after the calculation of total tax
> * * * [below line 51 on 1996 Form 1040].  These credits
> are treated like payments of tax.  All other credits
> [i.e., nonrefundable credits] are included in the
> calculation of the total tax and are considered "above the
> line" credits * * *
>
> * * * reductions to non-refundable credits directly
> affect the calculation of the total tax, whereas
> reductions to refundable credits do not.  Since the
> § 6651(a)(2) penalty is only applicable to the failure to
> pay tax as shown on the return, reductions to non-refundable
> credits would not trigger the § 6651(a)(2) penalty
> * * *

While the informal guidance provided by Service Center

Advice is not binding on the Commissioner--unlike the effect of

revenue rulings under <u>Rauenhorst v. Commissioner</u>, 119 T.C. 157

(2002)--the analysis provided by this particular advisory is

correct as it relates to the business credit petitioner claimed.

The general business credit is a nonrefundable credit, and

respondent's disallowance of the credit results in an adjustment

to petitioner's total tax.  The amount of the disallowed credit

is therefore included in the deficiency, thus rendering it

subject to the section 6663 fraud penalty but not the section 6651(a)(2) addition to tax.  We will accordingly deny respondent summary judgment as to the section 6651(a)(2) addition to tax.

The third issue is whether we should grant respondent's motion for summary judgment as to the section 6663 fraud penalties.

Section 6663 imposes a penalty equal to 75 percent of the portion of any underpayment attributable to fraud.  The Commissioner bears the burden of proving by clear and convincing evidence that an underpayment exists and some portion of each underpayment is due to fraud with the intent to evade tax.  Sec. 7454(a); Rule 142(b).  This burden may be satisfied by facts deemed admitted under Rule 37(c), Doncaster v. Commissioner, 77 T.C. 334, 336-338 (1981), or Rule 90(c), Coninck v. Commissioner, 100 T.C. 495, 499 (1993); Marshall v. Commissioner, supra at 273.

Respondent's burden of proof as to the section 6663 fraud penalties is satisfied by petitioner's deemed admissions and the testimony presented by respondent.  By failing to respond to affirmative allegations in the answer and requests for admissions, petitioner is deemed to have admitted that he fraudulently omitted income and claimed false deductions as part of a plan to evade tax during the years in issue.  Petitioner is also deemed to have admitted that he fraudulently filed returns for those years in order to claim losses and generate refunds to

which he was not entitled.  These deemed admissions conclusively establish that the underpayments of tax were due to fraud with intent to evade tax.  The admissions are further supported by Ms. Benner's testimony.  For these reasons, we will grant respondent's motions for summary judgment as to the section 6663 penalties.

To reflect the foregoing,

Appropriate orders and

decisions will be entered.