# United States Tax Court

T.C. Memo. 2025-77

ABDUL KHALIQ MUSTAFA MUHAMMAD,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7103-21.                                   Filed July 15, 2025.

————

Abdul Khaliq Mustafa Muhammad, pro se.

*Ka (Matt) Tam* and *Stephen C. Welker*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PANUTHOS, *Special Trial Judge*: In a Notice of Deficiency respondent determined deficiencies of $13,062 and $12,351 and civil fraud penalties of $9,796.50 and $9,263.25 under section 6663(a)[1] for taxable years 2017 and 2018 (years in issue).

The only remaining issue[2] is whether petitioner is liable for the fraud penalties under section 6663.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The Court previously granted respondent's Motion for Partial Summary Judgment on the issue of unreported income. *Muhammad v. Commissioner*, T.C. Memo. 2023-124. Before the trial of this case, the Court granted respondent's Motion for Partial Summary Judgment on the issue of deductions claimed on Schedule A, Itemized Deductions, and expenses reported on Schedule C, Profit or Loss From Business.

[*2]                                    FINDINGS OF FACT

The findings of fact are derived from the parties' filings, the Stipulation of Facts, prior holdings by this Court,[3] and the testimony of petitioner and the revenue agent at trial. Petitioner resided in Virginia when the Petition was filed.

Petitioner is a management and program analyst with the Internal Revenue Service (IRS) and holds multiple educational degrees including a master's degree in business administration and a Master of Science of Laws in International Taxation and Financial Services. Petitioner has at least 31 years of government service.

Petitioner asserted that during the years in issue, he operated a business, El Virtuoso Enterprise (EVE), providing education, finance, and insurance consulting services. EVE's business address was listed at the same address as petitioner's home.

I.     *Petitioner's Tax Returns*

Petitioner prepared and timely filed Forms 1040, U.S. Individual Income Tax Return, Schedules C, Schedules A, and Schedules SE, Self-Employment Tax, for the years in issue. With respect to EVE, petitioner reported net losses of $36,515 and $40,124 for the years in issue. Petitioner has reported a Schedule C loss on every return he has filed since 2012. Petitioner was aware of the requirement to maintain business books and records, but did not do so.

Petitioner claimed deductions and reported expenses for the years in issue as follows:

---

[3] Respondent filed an Answer and asserted affirmative allegations. Petitioner did not deny or otherwise respond to the affirmative allegations. Respondent filed a Motion for Entry of Order that Undenied Allegations Be Deemed Admitted Pursuant to Rule 37(c). Petitioner failed to respond after being given an opportunity to do so and the Court entered an Order granting respondent's Motion, ruling that the undenied allegations set forth in the Answer be "deemed admitted" for the purposes of this case.

[*3]

| Deduction/Expense | 2017 | 2018 |
|---|---|---|
| Business Home Use | $18,909 | $16,926 |
| Other | 3,890 | 3,890 |
| Utilities | 4,800 | 4,320 |
| Supplies | 400 | 400 |
| Office | 7,794 | 7,794 |
| Insurance | 2,508 | 2,508 |
| Car and Truck | 3,681 | 3,190 |
| Advertising | 150 | 150 |
| Gross Receipts | 6,000 | 4,500 |
| Meals and Entertainment | 125 | 112 |
| Taxes and Licenses | 258 | — |
| Educator | 250 | 250 |
| Student Loan Interest | 1,228 | 1,573 |
| Repairs and Maintenance | — | 4,504 |
| Depreciation | — | 530 |
| Travel | — | 300 |
| Charitable Contributions | 3,014 | 5,542 |
| Medical and Dental | 1,952 | — |
| Miscellaneous | 1,066 | — |

II.  *Examination*

The IRS selected petitioner's returns for examination and assigned Revenue Agent (RA) Matus to the matter. In conducting the examination, RA Matus requested business records and substantiating documents. Petitioner did not provide such documents. As a result, RA Matus issued summonses to petitioner's banks and performed a bank deposits analysis. RA Matus conducted an in-person interview and subsequently toured petitioner's home and workspace.

At the meeting with RA Matus, petitioner asserted that he experienced computer damage at his home in 2017 and water damage in 2018 which led to a loss of alleged business records. Petitioner made related claims with Verizon and Nationwide Insurance. The record does not reflect any information as to the outcome of petitioner's insurance claims.

[*4]    As the examination progressed, petitioner became nonresponsive and noncompliant.  Shortly after RA Matus's visit to petitioner's home, petitioner filed a complaint against her.  Petitioner alleged that RA Matus acted improperly by suggesting that petitioner could pay the deficiencies by credit card and requested that the examination be terminated.  There is no information in the record as to the outcome of the petitioner's complaint.

From the bank deposits analysis, RA Matus determined that petitioner had unreported Schedule C gross receipts for the years in issue and made adjustments to include the additional gross receipts.  Because of a lack of evidence of EVE business activity and substantiating documents, RA Matus also disallowed claimed Schedule C and Schedule A deductions.[4]  RA Matus made an initial determination to assert the civil fraud penalties under section 6663 and, in the alternative, the negligence and substantial understatement penalties under section 6662(a), (c), and (d) for the years in issue.  RA Matus prepared a Civil Penalty Approval Form, and her immediate supervisor, Masud Kamal, signed the form on August 10, 2020.

Respondent issued a Notice of Deficiency on November 25, 2020, determining deficiencies of $13,062 and $12,351 and civil fraud penalties of $9,796.50 and $9,263.25 under section 6663(a) for the years in issue.

III.    *Procedural History*

Petitioner timely filed a Petition with this Court seeking redetermination of the deficiencies and penalties.  The Court issued an Opinion granting respondent's Motion for Partial Summary Judgment on the issue of unreported income.  *Muhammad*, T.C. Memo. 2023-124.  The Court held that RA Matus had properly employed a bank deposits analysis in determining that petitioner had unreported gross receipts for the years in issue.  While petitioner made various assertions to explain the omitted receipts such as an insurance payout or redeposited cash, he failed to produce any evidence in support of such contentions.  Therefore, the Court concluded that petitioner had unreported gross receipts of $8,347 and $7,231 for the years in issue.  While the Court recognized that the deemed admitted affirmative allegations related to possible badges of fraud, we declined to conclude that respondent had

---

[4] Petitioner was allowed some charitable contribution and student loan interest deductions for the years in issue.

**[\*5]** established clear and convincing evidence of petitioner's fraudulent intent. The Court held that the parties could present evidence relating to the fraud penalties at a future trial. The case was subsequently set for trial.

At the subsequent trial, which is the subject matter of the instant Opinion, the Court provided the parties an opportunity to provide evidence in support of and in response to the allegations of fraud. The Court heard testimony from RA Matus regarding the examination and the allegations of improper conduct. At the conclusion of trial, the Court directed respondent to file a memorandum brief and allowed petitioner an opportunity to file a response. Respondent filed a Supplemental Memorandum Brief. Petitioner did not file a response.

OPINION

I.     *Section 6663(a) Generally*

Section 6663(a) imposes a civil fraud penalty with respect to a filed return if any part of any underpayment of tax required to be shown on the return is due to fraud. The amount of the penalty is 75% of the portion of the underpayment which is attributable to fraud. If any part of an underpayment is due to fraud, then the entire underpayment is treated as attributable to fraud except as to any portion the taxpayer establishes as not attributable to fraud. § 6663(b).

II.    *Supervisory Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Baxter v. Commissioner*, 910 F.3d 150, 169 n.3 (4th Cir. 2018), *aff'g Curtis Inv. Co. v. Commissioner*, T.C. Memo. 2017-150. As a threshold matter, the Commissioner must show that he complied with section 6751(b)(1). *See Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017) (ruling that "compliance with § 6751(b) is part of the Commissioner's burden of production" under section 7491(c)), *aff'g in part, rev'g in part* T.C. Memo. 2015-42. In *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020), we explained that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] [the taxpayer] that the Examination Division ha[s] completed its work and . . . ha[s] made a definite decision to assert penalties." Once the Commissioner introduces evidence sufficient to show written

[*6] supervisory approval, the burden shifts to the taxpayer to show that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the taxpayer] before the proffered approval" was secured. *Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

Respondent submitted a Civil Penalty Approval Form dated August 10, 2020, in which RA Matus recommended assertion of fraud penalties or, alternatively, negligence or substantial understatement penalties for the years in issue. RA Matus's immediate supervisor, Masud Kamal, signed the form on August 10, 2020. The recommendation to assert fraud penalties was first communicated to petitioner in the Notice dated November 25, 2020, with an attached Form 4549–A, Income Tax Examination Changes, showing the penalty calculations. Accordingly, respondent has satisfied his burden with respect to section 6751(b)(1).

III.  *Burden of Proof*

Fraud is an intentional wrongdoing designed to evade tax believed to be owing. *Neely v. Commissioner*, 116 T.C. 79, 86 (2001). The Commissioner bears the burden of proving fraud and must establish fraud by clear and convincing evidence. *See* § 7454(a); Rule 142(b); *Castillo v. Commissioner*, 84 T.C. 405, 408 (1985).

To carry that burden, the Commissioner must show that (1) an underpayment of tax exists for the year in issue and (2) some part of the underpayment is attributable to fraud. *See DiLeo v. Commissioner*, 96 T.C. 858, 873 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). The Court has previously concluded that underpayments of tax exist; therefore, the Court will consider whether any part of the underpayments are attributable to fraud.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977). Fraud is not to be presumed or based upon mere suspicion. *Petzoldt v. Commissioner*, 92 T.C. 661, 699–700 (1989). But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. *Id.* at 699.

Deemed admissions can be sufficient to satisfy the Commissioner's burden of proof as to fraud. *See Doncaster v. Commissioner*, 77 T.C. 334, 337 (1981); *see also Voccola v. Commissioner*, T.C. Memo. 2009-11, 2009 WL 103367, at *8 (observing that the Commissioner can satisfy his burden of proof as to section 6663

[*7] fraud penalties by deemed admissions). While the U.S. Court of Appeals for the Fourth Circuit, to which this case is appealable, has yet to weigh in, other circuits have agreed that deemed admissions may be relied upon for issues where the government bears the burden of proof. *See Baptiste v. Commissioner*, 29 F.3d 1533, 1537 (11th Cir. 1994), *aff'g* 100 T.C. 252 (1993) *and* T.C. Memo. 1992-198; *see also Smith v. Commissioner*, 926 F.2d 1470, 1476 n.11 (6th Cir. 1991), *aff'g* 91 T.C. 1049 (1988) *and* T.C. Memo. 1989-171. We previously concluded in *Muhammad*, T.C. Memo. 2023-124, that the deemed admissions alone in this case do not sufficiently satisfy respondent's burden. Therefore, we further examine the record to consider additional evidence provided at trial.

IV. *Badges of Fraud*

Courts often rely on various "badges" of fraud to find circumstantial evidence of fraud. *Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Campfield v. Commissioner*, T.C. Memo. 1996-383, 1996 WL 467816, at *9, *aff'd*, 133 F.3d 906 (2d Cir. 1997) (unpublished table decision). These badges focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash. *See Bradford v. Commissioner*, 796 F.2d at 307–08; *Parks v. Commissioner*, 94 T.C. 654, 664–65 (1990); *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988).

The existence of any one badge is not dispositive, but the existence of several badges is persuasive circumstantial evidence of fraud. *Niedringhaus v. Commissioner*, 99 T.C. 202, 211 (1992). The Court also considers a taxpayer's intelligence, education, and tax expertise in determining whether he acted with the requisite fraudulent intent. *See Holmes v. Commissioner*, T.C. Memo. 2012-251, at *31, *aff'd*, 593 F. App'x 693 (9th Cir. 2015).

While several of these factors have no application here, the record is clear that petitioner substantially understated his income, failed to

[*8] keep adequate records, offered implausible or inconsistent explanations, and failed to cooperate with tax authorities.

### A.  *Understatement of Income*

Substantially understating income is strong evidence of fraud, particularly if the understatement is not satisfactorily explained. *See Vanover v. Commissioner*, T.C. Memo. 2012-79, 2012 WL 952871, at *4. An understatement of income can be accomplished by overstating deductions as well as by omitting income. *See Gould v. Commissioner*, 139 T.C. 418, 446–47 (2012), *aff'd*, 552 F. App'x 250 (4th Cir. 2014); *Estate of Temple v. Commissioner*, 67 T.C. 143, 161 (1976). Respondent's adjustments include unreported Schedule C gross receipts of $8,347 and $7,231 and various disallowed deductions that resulted in deficiencies of $13,062 and $12,351 for the years in issue.

### B.  *Keeping Inadequate Records*

Petitioner failed to supply adequate business records and related documents. As an IRS employee and holder of several degrees pertaining to taxation, petitioner was aware of recordkeeping requirements under the Internal Revenue Code. Upon request, he did not provide any business records related to EVE and maintained that such records were lost due to flood and computer damage. When invited by the Court to testify, he repeatedly asserted he had no alternative substantiation and refused to even attempt to reconstruct any records. *See Meier v. Commissioner*, 91 T.C. 273, 302 (1988) (holding that a taxpayer's inadequate recordkeeping evidenced an intent "to conceal information" from the IRS).

### C.  *Implausible or Inconsistent Explanations*

Petitioner failed to provide plausible explanations as to his unreported gross receipts and lack of records. He asserted that the unreported gross receipts were attributable to an insurance payout and redeposited cash, but he did not provide any evidence in support thereof.

While petitioner testified that all his records were lost as a result of flood and computer damage, he did not provide any testimony or information about the circumstances of the flood or computer damage. Although the Court invited petitioner to present testimony to reconstruct unavailable records and explain the nature of his activities, petitioner repeatedly declined to provide such testimony. While petitioner presented insurance claims he made regarding alleged flood

[*9] and computer damage, these exhibits do not establish that flood or computer damage occurred. Neither do they provide any indication of causation, extent of damage, or the outcome of the claims. Rather, taken on their own, they substantiate only that petitioner made insurance claims.

D.    *Failing to Cooperate with Tax Authorities*

Petitioner failed to communicate and cooperate with the IRS throughout the examination. Although RA Matus requested substantiating documents, petitioner did not provide any. As a result, RA Matus issued summonses to petitioner's banks in order to complete her bank deposits analysis. *See Good v. Commissioner*, T.C. Memo. 2012-323, at *52 (finding lack of cooperation where revenue agent was forced to issue a summons for a taxpayer's bank records).

At trial petitioner made allegations concerning RA Matus's conduct during the examination, and the record reflects that petitioner filed a complaint against RA Matus requesting the examination be shut down. At trial RA Matus addressed the allegations of improper conduct and testified that she had suggested payment of the liability by credit card only as an option. There is no information in the record to suggest any action was taken as a result of petitioner's complaint against RA Matus. On the basis of the record, the Court is satisfied that RA Matus did not engage in improper conduct. Further, petitioner's allegations do not explain why he failed to communicate and cooperate with the IRS during the examination.

V.    *Conclusion*

On the basis of a review of the entire record, we find that petitioner engaged in repeated underreporting of income, claimed numerous deductions and expenses beyond receipts, failed to keep adequate records, and failed to cooperate with tax authorities. Considering petitioner's background and his refusal to provide any testimony to reconstruct records, the existence of several badges of fraud in this matter is persuasive circumstantial evidence of fraud. *See Niedringhaus*, 99 T.C. at 211; *see also Holmes*, T.C. Memo. 2012-251. The Court was continually frustrated by petitioner's failure to provide adequate explanations despite having been provided opportunities to do so.

We conclude that respondent has established, by clear and convincing evidence, that petitioner's underpayments of tax for the

**[\*10]** years in issue were attributable to fraud. Petitioner did not establish, by a preponderance of the evidence, that any portions of the underpayments were not attributable to fraud. *See* § 6663(b). We thus sustain respondent's determination that petitioner is liable for civil fraud penalties for the years in issue.

To reflect the foregoing,

*Decision will be entered for respondent.*