T.C. Memo. 2012-251

UNITED STATES TAX COURT

RALPH E. HOLMES, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3769-10.                    Filed August 30, 2012.

P sold shares of M at a gain but failed to report that gain, claiming that he is entitled to defer recognizing that gain because a substantial portion of that gain would have qualified for deferral under I.R.C. sec. 1045 (rollover of gain from qualified small business stock to another qualified small business stock) despite his failure to elect deferral on his return and because he is entitled to administrative relief under sec. 301.9100-1, Proced. & Admin. Regs.  By the amended answer, R asserted an I.R.C. sec. 6663(a) civil fraud penalty.

<u>Held</u>:  P is not entitled to defer recognition of gain on sales of M stock because he failed to prove a qualifying rollover to another qualified small business stock; we need not therefore consider P's claim that R improperly denied him administrative relief from his failed election.

<u>Held</u>, <u>further</u>, P failed to prove capital losses.

**[\*2]**       <u>Held</u>, <u>further</u>, R failed to prove by clear and convincing evidence fraudulent intent at the time returns were filed.

<u>Held</u>, <u>further</u>, accuracy-related penalty sustained for all years.

<u>Held</u>, <u>further</u>, addition to tax for untimely return sustained.


<u>Robert Brooks Martin Jr.</u>, for petitioner.

<u>Michael S. Hensley</u>, <u>Blake W. Ferguson</u>, and <u>Jeffrey L. Heinkel</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, <u>Judge</u>:  By notice of deficiency (notice), respondent determined deficiencies, additions to tax, and penalties with respect to petitioner's Federal income tax as follows:[1]

---

[1]Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all amounts to the nearest dollar.

| [*3] Year | Deficiency | Penalty sec. 6662(a) | Addition to tax sec. 6651(a)(1) |
|---|---|---|---|
| 2000 | $139,967 | $27,993 | $33,060 |
| 2001 | 116,466 | 23,293 | -0- |
| 2002 | [1]217,289 | 43,458 | -0- |
| 2003 | 184,335 | 36,867 | -0- |
| 2004 | 37,368 | 7,474 | -0- |

[1]On brief, petitioner and respondent set forth $271,289 and $217,789, respectively, as the disputed 2002 deficiency in tax. Neither amount corresponds to the determination in the notice. We cannot determine whether those amounts are typographical errors, and neither party explains the numerical discrepancy. Since we decide herein that petitioner did underpay his tax for 2002, we leave it to the parties to resolve the aforementioned discrepancy and related adjustments in their computation(s) under Rule 155.

By amended answer, respondent asserted, for 2000, 2001, 2002, 2003, and 2004 (years in issue), section 6663(a) civil fraud penalties of $104,975, $87,350, $162,967,[2] $138,251, and $28,026, respectively, or, alternatively, section 6662(a) accuracy-related penalties as set forth in the notice.

---

[2]On brief, both parties list $163,342 as the sec. 6663(a) penalty amount for 2002, which differs from that in the amended answer. Since we find petitioner not liable for any sec. 6663(a) penalty, we need not resolve that discrepancy.

**[*4]** Taking into account petitioner's concessions,[3] the issues for decision are whether petitioner: (1) should have included in income capital gains of $498,000, $408,662, $1,097,166, $1,012,702, and $29,425 for 2000, 2001, 2002, 2003, and 2004, respectively, (2) is entitled to capital loss deductions for 2002-04, (3) is liable for the section 6663(a) civil fraud penalty for each year in issue or, alternatively, for the section 6662(a) accuracy-related penalty for each year in issue, and (4) is liable for the section 6651(a)(1) addition to tax for failure to timely file for tax year 2000. In deciding issue (1), we are asked to decide for each year in issue: whether gain from the sale of stock held by petitioner qualifies for deferral under section 1045 (allowing a taxpayer in certain circumstances to elect to defer taxation of the gain on sales of qualified small business stock); and whether petitioner should have been granted, pursuant to section 301.9100-3, Proced. & Admin. Regs., an extension of time to file a section 1045 election.

---

[3]Petitioner concedes that (1) the periods of limitations on assessment provided by sec. 6501 remain open for 2000-04, and that (2) he is not entitled to depreciation deductions of $7,012 and $3,629 that he claimed on Schedules C, Profit or Loss From Business, for 2003 and 2004, respectively.

[*5]                              FINDINGS OF FACT

Introduction

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time he filed the petition, petitioner lived in California.

Background

Petitioner is a medical doctor specializing in pediatric craniofacial surgery. At the time of trial, he was employed as Associate Chief of Craniofacial Surgical Services at Children's Hospital and Health Center in San Diego, California. He received a bachelor of arts degree and a medical degree from Boston University.

MacroPore, Inc.

In May 1997, petitioner, Christopher Calhoun, and Stefan Lemperle cofounded MacroPore, Inc. (MacroPore), a Delaware C corporation. MacroPore initially engaged in the development, manufacture, and marketing of bioresorbable surgical implants; its central focus later became the development of regenerative therapies.[4]

---

[4]At some point, the corporation changed its name to MacroPore Biosurgery, Inc., and then to Cytori Therapeutics, Inc. (Cytori), but we shall continue to refer to it as MacroPore.

**[*6]**  On May 20, 1997, petitioner acquired 1 million shares of MacroPore stock at their original issue for 1 cent per share.  He held those shares in a brokerage account with Charles Schwab & Co., Inc. (Charles Schwab).

In August 2000, MacroPore made an initial public offering of stock and was quoted on the Neuer Markt of the Frankfurt Stock Exchange in Germany.  The stock later traded on the NASDAQ Capital Market and then on the NASDAQ Global Market.

LeonardoMD, Inc.

In 2000, petitioner cofounded LeonardoMD, Inc. (LeonardoMD), a Delaware C corporation.  LeonardoMD provides on demand physician practice management software delivered over the Internet.  In 2005, petitioner became the corporation's chief executive officer, and later he became its president.

Petitioner's MacroPore and LeonardoMD Stock Transactions

In each year in issue, petitioner sold some of his shares of MacroPore. Between June 20, 2000, and June 10, 2004, he sold a total of 972,500 shares,

**[*7]** realizing $3,055,680 in total proceeds.[5]  Between January 4, 2002, and July 27, 2004, he purchased shares of LeonardoMD stock in 36 separate transactions.[6]

Conversation With Mr. Calhoun

In late 2000, petitioner spoke with Mr. Calhoun "about selling the MacroPore stock and putting it [the proceeds] into the Leonardo company".  Mr. Calhoun told him about an article he had read concerning a tax provision that permits taxpayers to roll over gain from a startup company "into another start-up company and then defer that tax until the profit from the second investment."  He said that petitioner "should look into it."

Mr. Calhoun is neither a tax professional nor a financial adviser and did not provide to petitioner a written financial opinion.  Petitioner did not seek advice from other individuals as to the provision's procedures or requirements,[7] and there is no evidence that he even read the provision.

---

[5]The stipulation is in conflict as to whether the first and last sale dates were as stated or occurred on February 7, 2000, and June 15, 2004, respectively.  We do not think that the conflict affects our analysis.

[6]The parties stipulated the dates of the MacroPore and LeonardoMD stock sales and purchases as well as the amounts of sale proceeds received and amounts paid in each transaction, and we need not set forth those dates and amounts here.

[7]Petitioner does not claim that the referenced statutory provision is sec. 1045, discussed infra, but we assume that to be the case.

[*8] Petitioner's 2000-04 Federal Income Tax Returns

Petitioner hired Mashallah Afshar, an enrolled agent, to prepare his individual Federal income tax return for each year in issue.

Petitioner untimely filed his 2000 Form 1040, U.S. Individual Income Tax Return. He reported a capital gain of $2,069,[8] total tax of $2,093, an estimated tax payment of zero, Federal income tax withheld of $4,911, and an overpayment of $2,818, which he applied to his 2001 estimated tax. Petitioner did not attach to the Form 1040 a Schedule D, Capital Gains and Losses, and did not report that year's MacroPore stock sale.

Petitioner timely filed his 2001 Form 1040. He reported zero capital gain, total tax of $8,280, estimated tax payments of $2,819, Federal income tax withheld of $466, and a tax liability of $4,995. Petitioner did not attach to the Form 1040 a Schedule D and did not report that year's MacroPore stock sales.

Petitioner timely filed his 2002 Form 1040. He reported a capital loss deduction of $3,000, total tax of $273, an estimated tax payment of zero, Federal income tax withheld of $3, and a tax liability of $270. The attached Schedule D reported the following transaction: "Charles Schwab Stock Trsdes [sic]",

---

[8]Because the parties stipulated that petitioner failed to report gain from the sale of MacroPore stock for taxable years 2000-04, we assume that that amount represents capital gain from an unrelated transaction.

[*9] involving unidentified stock acquired on various dates at a cost or other basis of $512,500 and sold on various dates at $477,050, generating a net long-term capital loss of $35,450.

Petitioner timely filed his 2003 Form 1040. He reported a capital loss deduction of $3,000, total tax of $9,970, an estimated tax payment of zero, Federal income tax withheld of $9,627, and a tax liability of $343. The attached Schedule D reported a $35,450 long-term capital loss carryover from 2002 but did not report that year's MacroPore stock sales.

Petitioner timely filed his 2004 Form 1040. He reported capital gain of $3,405, total tax of $162,932, an estimated tax payment of zero, Federal income tax withheld of $85,466, and a tax liability of $77,466. The attached Schedule D reported the following transaction: the sale of "MacroPore Biosurgery", acquired on September 4, 1992, at a cost or other basis of $37,500 and sold on June 4, 2004, at $29,500, generating a long-term capital loss of $8,000. That long-term capital loss was offset by two other transactions reported on the Schedule D, "Janus Growth & Income" and "Janus Flexible Income", from which a total of $43,855 of long-term capital gain was reported. Part of that long-term capital gain remaining after the offset was then offset by a long-term capital loss carryover of $32,450, resulting in a net long-term capital gain of $3,405.

**[*10]** <u>Internal Revenue Service (IRS) Examination</u>

In 2006, respondent initiated an examination of petitioner's 2003 income tax return, later expanding the examination to include his 2000-02 and 2004-05 tax returns.[9]  Respondent assigned Revenue Agent Lawrence Lee to the examination. On February 16, 2006, petitioner executed a Form 2848, Power of Attorney and Declaration of Representative, authorizing Mr. Afshar to represent him before the IRS with respect to tax years 2002, 2003, and 2004.

Early in the examination, Revenue Agent Lee discovered that petitioner had failed to report $568,187 from MacroPore stock sales on his 2003 tax return.  On April 24, 2006, Revenue Agent Lee met with Mr. Afshar, and, during their conversation, Revenue Agent Lee identified petitioner as the founder of MacroPore. Mr. Afshar denied that petitioner was the corporation's founder, stating that he had confused petitioner with another Children's Hospital employee who bore the same name.

As the examination progressed, Revenue Agent Lee asked Mr. Afshar about petitioner's MacroPore stock basis.  Mr. Afshar refused to answer, telling him that

---

[9]Respondent later closed his examination of tax year 2005 without making any change to petitioner's return because "[n]o stock sales were found in 2005."

[*11] he would only discuss the stock sale with Revenue Agent Lee's group manager, Supervisory Internal Revenue Agent Hassan Mahamoud.

At a meeting of Revenue Agent Lee, petitioner, Agent Mahamoud, and Mr. Afshar, Revenue Agent Lee asked why petitioner had failed to report the MacroPore sales on his tax return. Mr. Afshar replied that "there were no gains involved and that's why nothing was reported." After the meeting, Mr. Afshar sent to Agent Mahamoud a letter dated July 2, 2006, which stated in part: "Please find extra Doc. that I was able to find." The attached document, a spreadsheet, indicates various purchases of MacroPore stock in 1999 and 2000 at costs ranging between $4.25 and $5 per share. Petitioner prepared the spreadsheet after the IRS had initiated the examination. He prepared it knowing that the information it contained was inaccurate and that Mr. Afshar intended to present the spreadsheet to Agent Mahamoud. Petitioner understood that the spreadsheet would be submitted to the IRS for the purpose of evading tax.

At some point, Mr. Afshar invited Agent Mahamoud to lunch to discuss the pending audit. At the lunch meeting, Mr. Afshar offered to pay for Agent Mahamoud's lunch and offered him a framed painting (or drawing or lithograph) of a Mideastern design with Islamic religious sayings written in Arabic. Islam is

[*12] the common religion of Mr. Afshar and Agent Mahamoud. Agent Mahamoud declined both offers.

In 2007, through a third-party inquiry of Cytori, MacroPore's successor, Revenue Agent Lee learned that "Dr. Holmes got a million shares [of MacroPore] for a penny each." He scheduled an October 17, 2007, interview with petitioner to discuss that newly discovered information. On the morning of the interview, however, Mr. Afshar canceled the meeting, an employee in his office stating that petitioner "was busy with his surgery schedule".

Application for Retroactive Section 1045 Election

In December 2007, petitioner consulted attorneys at the Waage Law Firm regarding tax years 2003 and 2004. They advised him of the statutory requirements to qualify for a deferral of gain under section 1045 and the time and manner for electing such tax treatment. After the meeting, petitioner executed a Form 2848 authorizing, among others, Robert Martin, Jr., an attorney at the Waage Law Firm, to represent him before the IRS with respect to tax years 2003-06. He subsequently executed another Form 2848 appointing those individuals as his representatives with respect to tax years 2000-02. Petitioner revoked the Form 2848 appointing Mr. Afshar as his representative.

[*13] On behalf of petitioner, Mr. Martin submitted to respondent a "Revenue Ruling Submission Application for Relief under Regulations § 301.9100-1" (section 9100 relief request) dated April 24, 2008. The section 9100 relief request sought an extension of time to make a section 1045 election for taxable years 2003, 2004, and 2006.

Respondent sent to petitioner a letter dated October 24, 2008, denying his section 9100 relief request for 2003 and 2004.[10] The letter stated in relevant part: "granting the requested relief in the form of additional time for the Taxpayer to make elections for the application of § 1045 to stock sales which it [sic] either did not report or reported as resulting in losses when the transactions resulted in the realization of gains would be prejudicial to the interest of the government." The letter further stated that it expressed no opinion whether the MacroPore stock "sold by the Taxpayer or the * * * [LeonardoMD] stock purchased by the Taxpayer constituted * * * [qualified small business stock] (or was otherwise eligible to be treated as such) or whether the other statutory and regulatory prerequisites for deferral under § 1045 were satisfied."

_____

[10]The letter also included a decision as to tax year 2006, but that year is not in dispute and we do not address it.

[*14] <u>Notice</u>

In the notice, respondent, among other things, made adjustments to petitioner's reported income reflecting petitioner's failure to report gain from sales of MacroPore stock in 2000-04.  Respondent also made adjustments disallowing the following deductions:  the $35,450 capital loss claimed for 2002; the related $3,000 capital loss claimed for 2002 and the $3,000 capital loss carryover claimed for 2003; the $8,000 capital loss claimed for 2004; and the $32,450 capital loss carryover claimed for 2004.  As noted above, respondent also determined a section 6651(a)(1) failure to timely file penalty for 2000 and a section 6662(a) accuracy-related penalty for each year in issue.  By amended answer, he asserted a section 6663(a) civil fraud penalty for each year in issue, or, alternatively, a section 6662(a) accuracy-related penalty as set forth in the notice.

OPINION

I.   <u>Deficiencies in Tax</u>

A.   <u>Underreported Income</u>

Respondent contends that petitioner was required to report on his 2000, 2001, 2002, 2003, and 2004 income tax returns gain from sales of MacroPore stock in the amounts of $498,000, $408,662, $1,097,166, $1,012,702, and $29,425, respectively.

**[\*15]** Petitioner does not dispute that he realized gain in those amounts or that he failed to report that gain on his tax returns for those years. Instead, he argues that he is entitled to defer recognition of that gain because (1) a substantial portion of the gain from those sales would have qualified for deferral under section 1045 had he properly made the election to do so on his tax returns and (2) although he failed to make a section 1045 election for each year in issue, he is entitled to administrative relief under section 301.9100-1, Proced. & Admin. Regs., because he acted reasonably and in good faith in failing to make the election and respondent's interests would not be prejudiced by granting such relief.

Petitioner bears the burden of proof. See Rule 142(a).[11]

    1.    <u>Law</u>

The amount of gain from the sale or other disposition of property is the excess of the amount realized therefrom over the adjusted basis of the property. Sec. 1001(a). Section 1001(b) defines the amount realized as "the sum of any money received plus the fair market value of the property (other than money) received." In this case, the adjusted basis would be petitioner's cost for the shares

---

[11]Petitioner makes no argument that, pursuant to sec. 7491(a), the burden shifts to respondent. In any event, the record establishes that petitioner does not satisfy the preconditions found in sec. 7491(a)(2).

**[\*16]** of MacroPore stock.  See sec. 1012.  Gain or loss on the sale or exchange of capital assets may be either long or short term.  See, e.g., sec. 1222(3) and (4).

Generally, a taxpayer must recognize the entire amount of gain realized from the sale or exchange of property.  Sec. 1001(c).  Section 1045(a), however, permits a taxpayer other than a corporation to defer recognizing gain from the sale of qualified small business stock that he has held for more than six months.  Upon election of that section's application, gain from the sale is recognized only to the extent that the amount realized exceeds:  "(1) the cost of any qualified small business stock purchased by the taxpayer during the 60-day period beginning on the date of such sale, reduced by (2) any portion of such cost previously taken into account under this section."  Sec. 1045(a).  The gain not recognized is applied "to reduce (in the order acquired) the basis for determining gain or loss of any qualified small business stock which is purchased by the taxpayer during the 60-day period".  Sec. 1045(b)(3).

"Qualified small business stock" has the same meaning given to it by section 1202(c), sec. 1045(b)(1), and is defined in relevant part as any stock in a C corporation originally issued after the enactment date of the Revenue Reconciliation Act of 1993, Pub. L. No. 103-66, 107 Stat. 416, if:  (1) as of the date of the stock issuance, the corporation is a qualified small business, (2) the

[*17] taxpayer acquires such stock at its original issue in exchange for money, and (3) the corporation meets the active business requirements of section 1202(e), namely that during substantially all of the taxpayer's holding period for such stock, the corporation used at least 80% (by value) of its assets in the active conduct of one or more qualified trades or businesses.

In relevant part, a "qualified small business" is any domestic C corporation if: (1) its aggregate gross assets did not exceed $50 million before the issuance, and (2) its aggregate gross assets immediately after the issuance (taking into account amounts received in the issuance) do not exceed $50 million. Sec. 1202(d)(1)(A) and (B). Aggregate gross assets are defined as the amount of cash and the aggregate adjusted bases of other property held by the corporation. Sec. 1202(d)(2)(A).

As relevant herein, to elect the application of section 1045, a taxpayer must make a section 1045 election by the due date (including extensions) for filing the income tax return for the taxable year in which he sold the qualified small business stock. Rev. Proc. 98-48, 1998-2 C.B. 367. In general, the election is made by

> (a) reporting the entire gain from the sale of * * * [qualified small business stock] on Schedule D, Capital Gains and Losses, * * *

> (b) writing "section 1045 rollover" directly below the line on which the gain is reported; and

**[*18]** (c) entering the amount of the gain deferred under § 1045 on the same line as (b) above, as a loss * * *

Id. sec. 3.02(1), 1998-2 C.B. at 367.

The parties' disagreement centers around whether: (1) petitioner's shares of LeonardoMD and MacroPore stock constituted "qualified small business stock" as defined under section 1202(c); (2) petitioner satisfied the 60-day-period requirement prescribed by section 1045(a)(1); and (3) petitioner is entitled to an extension of time to file a section 1045 election pursuant to section 301.9100-1, Proced. & Admin. Regs., for tax years 2000-04.

2. Petitioner's Entitlement To Defer Recognition of Gain From Sales of MacroPore Stock

a. Whether LeonardoMD Stock Constituted Qualified Small Business Stock on the Purchase Dates

The parties agree that the LeonardoMD stock purchased between January 4, 2002, and July 27, 2004, satisfies some of the aforementioned qualified small business stock requirements but dispute whether: (1) petitioner acquired the stock at its original issue in exchange for money, (2) LeonardoMD was a qualified small business because its aggregate gross assets before and immediately after the issuance did not exceed $50 million, and (3) during substantially all of petitioner's

**[*19]** holding period for the stock, LeonardoMD used at least 80% of its assets in the active conduct of one or more qualified trades or businesses.

Petitioner has proffered no evidence beyond his own uncorroborated testimony to establish that he acquired LeonardoMD stock at its original issue. "Original issue" is defined as the "first issue of securities of a particular type or series." Black's Law Dictionary 908 (9th ed. 2009). At trial, petitioner first testified that he purchased shares of LeonardoMD stock over time "from the president and his--up till 2005. I purchased them from the president and his accountant at the company, at LeonardoMD." That testimony appears to contradict his later testimony that he invested directly in the company and never bought stock from someone else. In any event, petitioner offered no documentary evidence, such as stock certificates or book entries from the corporation, indicating from whom he acquired the stock on each of the 36 stipulated purchase dates. He further failed to submit evidence showing that on each of those 36 purchase dates, he purchased any of the original issue of that stock type or series. We cannot (and do not) find that petitioner acquired LeonardoMD stock at its original issue; petitioner has failed to carry his burden of proof on that point.

We similarly cannot find that LeonardoMD was a qualified small business on the days on which he purchased its stock. As stated <u>supra</u>, in relevant part, a

[*20] "qualified small business" is any domestic C corporation if: (1) its aggregate gross assets did not exceed $50 million before the issuance, and (2) its aggregate gross assets immediately after the issuance (taking into account amounts received in the issuance) does not exceed $50 million. Sec. 1202(d)(1)(A) and (B). To prove that LeonardoMD's aggregate gross assets did not exceed that statutory ceiling, petitioner relies solely on his highly general testimony, the entirety of which is as follows:

> Q: Have the gross assets of LeonardoMD ever exceeded $50 million?
>
> A: No.

Petitioner purchased shares of LeonardoMD stock on 36 separate dates between January 4, 2002, and July 27, 2004. Yet he made no attempt to introduce balance sheets or other financial statements showing the amount of cash and property held by the corporation before and immediately after each of those dates or at any time during the corporation's existence.

To lend credence to his purported knowledge of LeonardoMD's finances, petitioner testified that, since taking on executive responsibilities in 2005 (after the years in issue), he has looked at its corporate financial documents. Absent corroborating documentary evidence, we need not, and do not, conclude, solely on

[*21] the basis of petitioner's self-serving testimony, that LeonardoMD's aggregate gross assets did not exceed $50 million on the days he received its stock. See Broz v. Commissioner, 137 T.C. 46, 59 (2011) ("We need not accept the taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence."). Petitioner has failed to satisfy his burden of proving that LeonardoMD constituted a qualified small business on the purchase dates.

Finally, petitioner failed to prove that LeonardoMD met the active business requirements of section 1202(e) during substantially all of his holding period for its stock. In support of his position, petitioner again relies on his own testimony, the entirety of which is as follows:

Q:    Does [LeonardoMD] have investment assets * * * *

A:    No investment assets. All of the revenue is used in its business.

The record is again devoid of documentary evidence showing the amount of corporate assets owned during the years in which he held the stock and the amount of those assets used in its business of providing on demand physician practice management software. In fact, the only evidence in the record concerning LeonardoMD's business is a stipulated paragraph describing its business as "providing on demand physician practice management software delivered over the

[*22] Web", and petitioner's above-cited testimony. We cannot, on the basis of uncorroborated testimony and a stipulation that does not rule out inactive business assets and income, reasonably conclude that petitioner met his burden of proving that, during substantially all of his holding period for LeonardoMD stock, the corporation used at least 80% of its assets in the active conduct of one or more qualified trades or businesses.

Petitioner has failed to prove that the LeonardoMD stock that he purchased between January 4, 2002, and July 27, 2004, constituted qualified small business stock within the meaning of section 1202(c).

b.     Petitioner's Arguments Concerning MacroPore Stock and the 60-Day Requirement of Section 1045(a)(1)

Under section 1045, both the stock sold and the stock purchased by the taxpayer during the 60-day period beginning on the date of the sale must be qualified small business stock. Sec. 1045(a). Because petitioner has failed to prove that any of the LeonardoMD stock he purchased was qualified small business stock, we need not consider the question of whether the MacroPore stock sold in each year in issue was qualified small business stock. We also need not address petitioner's argument that he reinvested the proceeds from those sales within a 60-day period, as prescribed by section 1045(a)(1).

**[\*23]** We note, however, that contrary to petitioner's position that section 1045 shields him entirely from each year's deficiency in tax, he concedes that he failed to meet the section 1045(a)(1) 60-day requirement for some of his LeonardoMD stock purchases. At trial, he testified that he did not purchase LeonardoMD stock within 60 days of the 2000 MacroPore sale. In addition, on brief, he concedes his failure to reinvest all of his MacroPore 2001-04 sale proceeds in LeonardoMD stock,[12] stating only that he reinvested "a substantial portion of the proceeds from the sale of stock in MacroPore in LeonardoMD within the 60-day period following such sale".

c. Petitioner's Entitlement to a Retroactive Section 1045 Election Under Section 301.9100-3, Proced. & Admin. Regs., for the Years in Issue

Because we concluded supra section I.A.2.a. of this report that petitioner failed to prove that the LeonardoMD stock purchased between January 4, 2002, and July 27, 2004, constituted qualified small business stock, petitioner cannot show that he satisfied section 1045 for 2000-04. A section 1045 election is thus

---

[12]In 2001, 2002, and 2003, petitioner received more in MacroPore stock sale proceeds than he spent in LeonardoMD stock purchases: for 2001 and 2003, he received $300,162 and $215,602, respectively, more in MacroPore stock sale proceeds. For 2002, he received either $205,416 or $305,416 more in MacroPore stock sale proceeds (the record is unclear as to the exact amount, but it is the fact of the excess, not the amount, that matters).

[*24] not available to him for those taxable years. We, therefore, do not consider petitioner's argument that respondent improperly denied his section 9100 relief request.[13]

### d. Conclusion

We conclude that, for each year in issue, petitioner is not entitled under section 1045 to defer recognition of gain realized from the sales of MacroPore stock. Accordingly, petitioner was required to report gain in the amounts of $498,000, $408,662, $1,097,166, $1,012,702, and $29,425 for 2000, 2001, 2002, 2003, and 2004, respectively.

### B. Disallowed Deductions

Section 165(a) generally permits taxpayers to claim as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Losses from sales or exchanges of capital assets are allowed only to the extent prescribed in sections 1211 and 1212. Sec. 165(f). Under those

---

[13]On brief, respondent argues that, contrary to petitioner's assertion, he "never made a request with respondent, formal or otherwise, for extensions of time to make a section 1045 election[] for his 2000, 2001, and 2002 tax years. It was only in his petition to Tax Court that petitioner requested retroactive section 1045 deferral" for those tax years. He asserts that, therefore: "It is arguable that the Court lacks jurisdiction in this case over petitioner's request in his petition relating to taxable years 2000, 2001, and 2002". Because we find that, for those taxable years, petitioner is not as a matter of law entitled under sec. 1045 to defer gain from the sales of MacroPore stock, we need not address respondent's argument.

**[*25]** limitations, individual taxpayers must first offset capital losses against capital gains; if aggregate capital losses exceed aggregate capital gains, they may deduct up to $3,000 of the excess against ordinary income. Sec. 1211(b). Capital losses exceeding the section 1211(b) limitation may then be carried forward to subsequent tax years. Sec. 1212(b).

A taxpayer must keep records to establish his entitlement to deductions; if he carries a deduction over to a succeeding year, he must keep records to substantiate that amount carried over. Sec. 6001; sec. 1.6001-1(e), Income Tax Regs.; e.g., Widemon v. Commissioner, T.C. Memo. 2004-162, 2004 WL 1559185, at *5. To substantiate a capital loss carryover, the taxpayer must show: (1) that a loss was incurred, (2) when he incurred the loss, (3) that he is entitled to deduct the loss, (4) whether the loss is capital or noncapital, or business or personal, and (5) the amount of the capital gain during the intervening years, in order to compute any allowable carryover. Widemon v. Commissioner, 2004 WL 1559185, at *5.

On his 2002 Schedule D, petitioner reported a $35,450 net long-term capital loss, which, because of the section 1211(b) limitation, gave rise to a $3,000 capital loss deduction. On his 2003 Schedule D, he claimed a $3,000 capital loss

[*26] deduction resulting from a $35,450 long-term capital loss carryover.[14]  On his 2004 Schedule D, among other things, he reported an $8,000 long-term capital loss on the sale of MacroPore Biosurgery and a long-term capital loss carryover of $32,450.  Respondent disallowed the losses and loss carryovers described (disallowed losses).

In the petition, petitioner avers nothing with respect to the long-term capital losses, capital loss deductions, and long-term capital loss carryovers.  See Rule 34(b)(4) (requiring, in a deficiency case, clear and concise assignments of each error which the taxpayer alleges the Commissioner to have committed in determining the deficiency or liability).  On brief, he proposes no findings of fact as to the issue, mentioning the Schedule D losses only in five of his objections to respondent's proposed findings of fact.  In those objections, petitioner, among other things:  (1) concedes that "Schedule D of * * * [the 2004 Form 1040] states an erroneous loss attributable to an unidentified number of shares of 'Macropore Biosurgery' of -8,000.", and (2) states that his 2002 tax return makes no claim that he inflated his MacroPore stock basis because the "Schedule D * * * states an

---

[14]The carryover apparently should have been $32,450 because of the $3,000 capital loss claimed for 2002.  See sec. 1212(b)(2)(a).  The error carried over to 2004.

[*27] aggregate 'cost or other basis' attributable to 'various' 'Charles Schwab Stock Trades'."

We accept petitioner's concession as to the 2004 $8,000 long-term capital loss. We interpret petitioner's second statement, about his stock basis, to be that he is entitled to the 2002 capital loss deduction he claimed (and the resulting carryover of that loss to 2003 and 2004) because the stock transactions reported on the 2002 Schedule D did not principally involve the MacroPore stock at issue herein (but some other stock) and thus accurately reported the aggregate bases and resulting long-term capital loss. Irrespective of that statement's truth, petitioner offered no evidence aside from his 2002 tax return to show that he incurred the $35,450 net long-term capital loss during that taxable year and that the loss could be carried over to tax years 2003 and 2004. A taxpayer's returns alone do not substantiate deductions or losses. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Thompson v. Commissioner, T.C. Memo. 2011-291, 2011 WL 6382704, at *3.

Because petitioner failed to adequately substantiate the claimed 2002 $35,450 net long-term capital loss, we find that petitioner is not entitled to any of the disallowed losses.

**[\*28]** C.     Conclusion

There is recognized to petitioner capital gain in the amounts of $498,000,

$408,662, $1,097,166, $1,012,702, and $29,425 for 2000, 2001, 2002, 2003, and

2004, respectively.  Moreover, petitioner is not entitled to a $3,000 capital loss

deduction for 2002 and 2003, an $8,000 capital loss deduction for 2004, or a

$32,450 net long-term capital loss carryover to 2004.  Accordingly, his taxable

income is increased on account of those adjustments (and on account of mechanical

adjustments with respect to his personal exemption) by $500,800, $411,562,

$1,103,166, $1,015,702, and $69,875 for 2000, 2001, 2002, 2003, and 2004,

respectively.[15]

II.     Application of the Section 6663 Civil Fraud Penalty

We next determine whether petitioner is liable for a section 6663(a) penalty

for each year in issue.  Section 6663(a) provides that, if any part of an

underpayment of tax required to be shown on a return is due to fraud, an amount is

added to the tax equal to 75% of the portion of the underpayment which is

attributable to fraud.  The Commissioner bears the burden of proof.  See sec.

---

[15]As stated infra sec. III.B. of this report, the record contains an incomplete Form 5278, Statement--Income Tax Changes.  We cannot determine, on the basis of that incomplete Form 5278, whether petitioner claimed personal exemptions for 2003 and 2004, which require adjustment.  We leave it to the parties to resolve that issue in their computation(s) under Rule 155.

**[\*29]** 7454(a); Rule 142(b).  To satisfy his burden of proof, the Commissioner must establish by clear and convincing evidence both that (1) the taxpayer underpaid his income tax for each year in issue and (2) at least some portion of each such underpayment was due to fraud.  DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  In establishing the underpayment, the Commissioner may not rely on the taxpayer's failure to meet his burden of proving error in the Commissioner's determination as to the deficiencies.  Id.  If the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud except for any portion of the underpayment which the taxpayer establishes by a preponderance of the evidence is not attributable to fraud.  Sec. 6663(b).

   A.   Underpayment of Tax

Respondent has shown by clear and convincing evidence that petitioner underpaid his tax for each year in issue.  Petitioner stipulated that he received proceeds in each year in issue from the sale of MacroPore stock and that he failed to include them in his income.  He disputes the taxability of the resulting gain, arguing his entitlement to defer its recognition pursuant to section 1045.  As discussed supra section I.A.2.c. of this report, we find that he is not so entitled.  He also concedes that he erroneously claimed an $8,000 long-term capital loss for

[*30] 2004.  Finally, he makes no argument that he has unclaimed deductions or credits that would reduce the tax burden attributable each year to his unreported income.

We find that respondent has shown by clear and convincing evidence that petitioner underreported his gross income and, consequently, underpaid his tax, for each year in issue.

B.    Fraudulent Intent

The second prong of the fraud test requires the Commissioner to prove that, for each year in issue, at least some portion of the taxpayer's underpayment of tax is due to fraud.  Fraud for that purpose is defined as intentional wrongdoing, with the specific purpose of avoiding a tax believed to be owed.  E.g., DiLeo v. Commissioner, 96 T.C. at 874.  The Commissioner must thus prove that the taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax.  See, e.g., Browning v. Commissioner, T.C. Memo. 2011-261, 2011 WL 5289636, at *13.  A fraudulent state of mind may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available.  E.g., DiLeo v. Commissioner, 96 T.C. at 874.  Mere suspicion, however, is not enough.  E.g., Katz v. Commissioner, 90 T.C. 1130, 1144 (1988).

[*31] Courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. Those badges of fraud include: (1) understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. E.g., Browning v. Commissioner, 2011 WL 5289636, at *13 (and cases cited thereat). "Although no single factor is necessarily sufficient to establish fraud, a combination of factors is more likely to constitute persuasive evidence." Id. The taxpayer's intelligence, education, and tax expertise are also relevant in determining fraudulent intent. E.g., id.

We find that respondent has failed to prove by clear and convincing evidence that petitioner had the specific intent to evade tax when he filed his 2000-04 Federal tax returns. Respondent contends that five indicia of fraud exist: (1) understatement of income, (2) implausible and inconsistent explanations of behavior, (3) failure to cooperate with tax authorities, (4) failure to make estimated payments, and (5) petitioner's education and sophistication.[16] Although

---

[16]A taxpayer's education and sophistication are not themselves badges of fraud but are merely relevant factors in determining "whether a taxpayer could have
(continued...)

**[\*32]** respondent has proffered some evidence of fraud, that evidence relates exclusively to petitioner's postfiling actions and does not convince us of his intention to evade tax when he filed his tax return for each year in issue. Respondent must prove by clear and convincing evidence that petitioner intended to evade tax in filing the returns. E.g., Avenell v. Commissioner, T.C. Memo. 2012-32, 2012 WL 333786, at \*2. We discuss each asserted indicium in turn.

      1.    Understatement of Income

A pattern of consistent underreporting of income, particularly when accompanied by other circumstances exhibiting an intent to conceal, justifies the inference of fraud. Furnish v. Commissioner, 262 F.2d 727, 728-729 (9th Cir. 1958), aff'g in part, remanding in part Funk v. Commissioner, 29 T.C. 279 (1957); Parks v. Commissioner, 94 T.C. 654, 664 (1990). Respondent argues that petitioner's five-year pattern of underreporting income and his reporting of "false losses for tax years 2002 and 2004 by inflating his basis in his MacroPore stock" demonstrate a specific intent to evade Federal income tax.

---

[16](...continued)
formed the intent necessary to be found liable for the fraud penalty." Wickersham v. Commissioner, T.C. Memo. 1999-276, 1999 WL 632707, at \*5. Petitioner is highly educated, intelligent, and a successful businessman who has cofounded at least two corporations. We hold him to that standard while evaluating his actions.

**[*33]** Petitioner failed to report on each of the subject tax returns substantial amounts of gain from MacroPore stock sales. As a result he underreported his income for each year in issue. We do not find, however, that he did so with the requisite fraudulent intent. Petitioner testified that, from a discussion with Mr. Calhoun in late 2000, he believed that recognition of those gains could be deferred because he sold "stock in one start-up company and invest[ed] that in another * * * start-up company." He further testified that he directed his tax return preparer, Mr. Afshar, to defer those gains on his 2000-04 tax returns and assumed "that he knew how to do that", himself remaining ignorant of, and uninterested in, the statutory and regulatory requirements for so doing. We find that petitioner's actions before he filed the subject returns support a conclusion that, at that time, he believed in good faith that he need not immediately recognize those gains. Respondent did not point to anything in the record attributing petitioner's failure to recognize the full amount of realized gain for each taxable year at issue to his intent to evade his tax liability rather than to his possible negligence and disregard of the applicable statutory and regulatory requirements.

We are not swayed by petitioner's concession that he deferred recognition of the entire amount of gain realized for 2001-04 despite not having reinvested all of the MacroPore sale proceeds for those years in LeonardoMD stock. We have

[*34] found no evidence that, in so doing, petitioner knew that his reported tax liabilities for those years failed to reflect his true tax liabilities and thereby intended to conceal income and evade tax.

We are, however, suspicious of petitioner's failure to report gain on his 2000 tax return, but suspicious circumstances alone will not sustain a finding of fraud. Katz v. Commissioner, 90 T.C. at 1144 ("This Court, however, will not sustain a finding of fraud based upon circumstances which at the most create only suspicion."). Petitioner's defense rests upon his belief that he could defer recognition of gain from the 2000-04 MacroPore stock sales because he invested those sale proceeds in LeonardoMD stock. Yet he admits to having invested none of the 2000 sale proceeds in that manner within the taxable year. Indeed, he did not make his first LeonardoMD stock purchase until approximately 18 months after the sole stock sale in 2000. However, because he filed the 2000 tax return on May 29, 2002, after he had purchased shares of LeonardoMD stock, it is possible that the 2000 understatement was due to his (incorrect) belief that the eventual purchase of stock in a "start-up company" justified deferring recognition of the gain realized in 2000. Respondent has failed to convince us that petitioner had a fraudulent intent in failing to report his 2000 gain.

[*35] We also disagree with respondent that petitioner fraudulently claimed long-term capital losses for 2002 and 2004. Respondent asserts that petitioner fraudulently claimed a $35,450 long-term capital loss from Charles Schwab stock trades in 2002 because he reported on the attached Schedule D inflated stock bases in MacroPore stock. We infer from respondent's contention an assumption that petitioner sold some of his shares of MacroPore stock, in which he held a basis of 1 cent each, in those transactions. As discussed supra, the record is devoid of evidence identifying MacroPore stock as the only stock, or even among the stocks, sold in those trades. Absent such information, we cannot begin to determine the inaccuracy of reporting the long-term capital loss let alone petitioner's intent in so reporting.

Respondent failed to offer clear and convincing evidence of petitioner's intent to evade tax in filing the 2004 Schedule D, which reports an $8,000 long-term capital loss from the sale of "MacroPore Biosurgery". Although petitioner concedes it is an "erroneous loss",[17] he asserts that "the entry was made by Petitioner's return preparer, Afshar, and Petitioner had informed Afshar that he sought to defer or roll over gains from the sale of stock in MacroPore and always

---

[17]The parties do not dispute that the transaction reported on petitioner's 2004 Schedule D involves the MacroPore stock at issue herein.

**[\*36]** assumed that Afshar knew how to do that in the preparation of Petitioner's returns." We find unlikely petitioner's ignorance of the erroneousness of the long-term capital loss upon filing the tax return because 2004 is the only year for which he omitted that year's realized MacroPore gain and reported a long-term capital loss from the stock sales. Although asserting the same aforementioned argument for taxable years 2000-03, he did not claim similar long-term capital losses for those years and did not offer an explanation as to that disparate tax reporting. Nevertheless, we are not convinced that he indeed intended, in filing the 2004 tax return, to deceive respondent and avoid his proper tax liability by claiming the erroneous loss. Mindful that it is respondent's burden to prove fraud by clear and convincing evidence, and absent persuasive supporting evidence, we cannot find that petitioner had the requisite fraudulent intent for 2004.

Respondent has failed to prove by clear and convincing evidence that petitioner understated his income for any year in issue with the intent to evade tax.

### 2. Implausible and Inconsistent Explanations of Behavior

Respondent next contends that petitioner "(personally or through his representative) offered a series of inconsistent explanations as to why he failed to report his substantial gains from his sales of MacroPore stock", specifically Mr. Afshar's statements that: (1) petitioner held no interests in MacroPore,

[*37] denying that petitioner founded the corporation, (2) "the deposits into petitioner's Charles Schwab account resulted from transfers" from petitioner's other bank accounts, and (3) "petitioner had no gains as a result of the sales".  He argues that, to support the latter statement, petitioner prepared, and Mr. Afshar submitted to Agent Mahamoud, a spreadsheet listing false bases in his shares of MacroPore for the purpose of misleading respondent's agents "into concluding the audit, thereby allowing petitioner to evade tax."

While the law is clear that fraudulent intent must exist at the time the taxpayer files the return, e.g., Gleis v. Commissioner, 24 T.C. 941, 952 (1955), aff'd, 245 F.2d 237 (6th Cir. 1957), postfiling events, such as inconsistent explanations and failing to cooperate in examination of the taxpayer's return, can be indicia of fraudulent intent at the time the return was filed, e.g., Scott v. Commissioner, T.C. Memo. 2012-65, 2012 WL 798039, at *12 (taxpayer admitting that his lack of cooperation in examination of his returns indicated that he intended to evade tax); Graham v. Commissioner, T.C. Memo. 2005-68, 2005 WL 730078, at *19 (inconsistent testimony at trial concerning distributions from partnership), aff'd, 257 Fed. Appx. 4 (9th Cir. 2007).  Nevertheless, conduct of the taxpayer, even though reprehensible, will not justify the imposition of the penalty, unless the fraudulent intent is shown to have existed when the return was made.

[*38] Barrier v. Commissioner, T.C. Memo. 1983-258. It seems very likely that Mr. Afshar was attempting to hide his own erroneous reporting on petitioner's behalf, done without petitioner's knowledge, when, with the intent to mislead them as to petitioner's proper tax liability for 2000-04, he told respondent's agents that "no gains [were] involved" in the MacroPore stock sales for those years. However, it is also very likely that petitioner prepared and allowed the submission to Agent Mahamoud of the supporting false spreadsheet with the intent to evade tax. Indeed, he concedes as much. There is no clear and convincing evidence, however, indicating that petitioner had formed that intention when he filed his tax return for each year in issue rather than afterwards upon presumably realizing the significant tax reporting errors on his 2000-04 tax returns.

### 3. Failure To Cooperate With Tax Authorities

Respondent next argues that petitioner failed to cooperate with respondent's agents during the examination of his tax returns, an indicium of fraud. He asserts specifically that: (1) petitioner failed to attend scheduled meetings, failed to produce requested records, "and provided vague or inaccurate explanations to justify his improper" tax reporting, (2) Mr. Afshar, petitioner's representative, would communicate only with Agent Mahamoud because he believed that he "could persuade Mr. Mahamoud to accept the false bases for MacroPore" by

**[\*39]** appealing to their cultural and religious similarities, and (3) Mr. Afshar attempted to influence Agent Mahamoud "into accepting larger false bases by offering him gifts".

We disagree. Respondent furnished no evidence that, in canceling the October 17, 2007, meeting petitioner intended to hinder the audit in hopes of evading tax believed to be owing. When canceling the meeting on behalf of petitioner, Mr. Afshar's employee cited as the reason petitioner's busy surgery schedule. Respondent, although incredulous as to the reason, stating on brief that "the interview was scheduled over a month prior to the interview date", proffered no evidence refuting its truth. We cannot conclude that a sudden claimed change in petitioner's surgery schedule alone evidences an intent to evade tax. To the contrary, petitioner or Mr. Afshar attended other meetings with Revenue Agent Lee and agreed with respondent's request to extend the applicable periods of limitation for assessment for each year in issue so that a more complete audit could be performed.

We do find, however, that petitioner failed to cooperate with respondent's agents by intentionally submitting a false document. See, e.g., Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984); Dobrich v. Commissioner, T.C. Memo. 1997-477, 1997 WL 669649, at \*10

[*40] ("Submitting false documents to the IRS is an indication of fraud."),

supplemented, T.C. Memo. 1998-39, aff'd without published opinion, 188 F.3d 512

(9th Cir. 1999). During the examination Mr. Afshar presented to Agent Mahamoud

a document listing false bases that petitioner purportedly held in MacroPore stock,

which petitioner had prepared during the examination despite being aware of its false

content. We are not convinced that he prepared and allowed the submission of the

false document to perpetuate a scheme formed at the time of filing his 2000-04 tax

returns to conceal taxable gain. Petitioner argues that he lacked such an intent at that

time, attributing his behavior to "a scheme concocted by Afshar to cover Afshar's

failure to * * * [properly make a section 1045 election] on Petitioner's tax return by

creating a spreadsheet with fictitious figures on basis". Respondent bears the burden

of proof as to this issue and has not pointed to anything in the record to convince us

that petitioner's statement is untrue.

Finally, the record is devoid of evidence indicating that Mr. Afshar's actions

towards Agent Mahamoud, while highly inappropriate, were part of petitioner's

scheme of tax evasion initiated at the time of filing the subject tax returns. As we

have stated above, it seems more likely that Mr. Afshar's actions were a continuation

of his attempt at mitigating the tax preparation errors.

**[\*41]** We find that, although petitioner failed to cooperate with respondent's agents by intentionally submitting a false document, his failure does not compel the conclusion that he had a fraudulent intent in filing his 2000-04 tax returns.

4.    Failure To Make Estimated Tax Payments

Respondent contends that petitioner's failure to make adequate estimated tax payments for each year in issue indicates his intention to not pay his correct tax liabilities for those years. Petitioner disagrees, arguing that his "estimated tax payments and withholdings were in amounts adequate to the payment of the tax liability shown to be due on the return". He further asserts that his failure to pay estimated tax in excess of the reported tax liabilities is further evidence of his belief that he "could defer the recognition of gain from the sale of stock in MacroPore by investing the proceeds of the sale in LeonardoMD."

Respondent has offered no evidence and we have found no indication in the record that petitioner knew that his liability for each year in issue required estimated tax payments in excess of those reported. Cf. Niedringhaus v. Commissioner, 99 T.C. 202, 213 (1992) (finding as evidence of an intent to evade tax the fact that the taxpayer "ceased filing estimated tax payments for the years in issue even though he knew that his business was expanding"). We do not find that

**[*42]** petitioner's failure to make adequate estimated tax payments is indicative of his fraudulent intent to file false returns.

### 5.    Conclusion

We find that respondent has failed to prove by clear and convincing evidence that any part of the underpayments of tax required to be shown on petitioner's 2000-04 returns was due to fraud.  Accordingly, petitioner is not liable for a section 6663(a) civil fraud penalty for any year in issue.

## III.    Imposition of the Section 6662 Accuracy-Related Penalty

We next consider whether, alternatively, petitioner is liable for a section 6662(a) accuracy-related penalty for each year in issue.

### A.    Introduction

Section 6662(a) imposes an accuracy-related penalty in the amount of 20% of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence), any substantial understatement of income tax, or any substantial valuation misstatement.  Sec. 6662(a) and (b)(1)-(3).  The accuracy-related penalty, however, does not apply to any part of an underpayment if it is shown that the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).

**[\*43]** The Commissioner bears the burden of production. See sec. 7491(c). To meet that burden, he must produce evidence regarding the appropriateness of imposing the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once he has met that burden, the taxpayer must come forth with evidence sufficient to persuade a court that the Commissioner's determination is incorrect, by showing, for instance, that the penalties are inappropriate because of reasonable cause. See id. at 446-447.

Petitioner assigns error to respondent's determination of an accuracy-related penalty for each year in issue on the grounds of "(1) negligence or disregard of rules or regulations, (2) a substantial understatement of income tax, or (3) a substantial valuation misstatement." On brief, respondent relies only on the grounds of substantial understatement of income tax and negligence. We construe that as a concession that the other grounds for imposition of the penalty for each year in issue are inapplicable. See Rule 151(e)(4) and (5).

Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds described in section 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

**[*44]** B.     Substantial Understatement of Income Tax Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return which is attributable to any substantial understatement of income tax. An "understatement of income tax" generally means the excess of the amount of tax required to be shown on the return for the taxable year, over the amount of the tax shown on the return. Sec. 6662(d)(2)(A). The understatement is deemed "substantial" if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

Respondent has satisfied his burden of production regarding the existence of substantial understatements of income tax for the years in issue. We have for those years sustained respondent's adjustments to petitioner's taxable income in the amounts of $500,800, $411,562, $1,103,166, $1,015,702, and $69,875, respectively. The resulting deficiencies, which in this case equal the understatements, are $139,967, $116,466, $217,289, $184,335, and $37,368, respectively. An incomplete Form 5278, Statement--Income Tax Changes, attached to the notice of deficiency, shows that the amounts of tax required to be shown on petitioner's 2000, 2001, and 2002 Forms 1040 are $142,060, $124,746,

**[\*45]** and $217,562, respectively. Each understatement of income tax for 2000-02 exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. While the incomplete Form 5278 is missing the page that would show the amounts required to be shown on petitioner's 2003 and 2004 returns, we think it a fair assumption that those amounts here equal the sum of the deficiency for the year plus the total tax shown on the year's return; viz, $194,305 and $200,300 for 2003 and 2004, respectively. See Viralam v. Commissioner, 136 T.C. 151, 176 (2011). The understatements of tax for 2003 and 2004 exceeds the greater of 10% of the tax required to be shown on the returns or $5,000.

Accordingly, petitioner is liable for the 20% accuracy-related penalty under section 6662(d) for the years in issue unless he meets the section 6664(c) exception for reasonable cause and good faith. Because of section 1.6662-2(c), Income Tax Regs., we need not address the applicability of the penalty based upon the ground of negligence for those years.

C.     Section 6664(c) Reasonable Cause Defense

A taxpayer may avoid the section 6662(a) penalty by showing that he had reasonable cause for a portion of the underpayment and that he acted in good faith with respect to that portion. Sec. 6664(c)(1). Reasonable cause requires that the taxpayer exercise "ordinary business care and prudence" as to the disputed item.

**[*46]** United States v. Boyle, 469 U.S. 241, 246 (1985). That determination is made on a case-by-case basis, taking into account all pertinent facts and circumstances, including the taxpayer's knowledge and experience. Woodsum v. Commissioner, 136 T.C. 585, 591 (2011); sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer may demonstrate reasonable cause through good faith reliance on the advice of an independent professional, such as a tax adviser, lawyer, or accountant, as to the item's tax treatment. Boyle, 469 U.S. at 251; Canal Corp. & Subs. v. Commissioner, 135 T.C. 199, 218 (2010). To prevail, the taxpayer must show that he: (1) selected a competent adviser with sufficient expertise to justify reliance, (2) supplied the adviser with necessary and accurate information, and (3) actually relied in good faith on the adviser's judgment. 106 Ltd. v. Commissioner, 136 T.C. 67, 77 (2011) (citing Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002)), aff'd, 684 F.3d 84 (D.C. Cir. 2012). The professional's advice must be based on all pertinent facts and circumstances. Crispin v. Commissioner, T.C. Memo. 2012-70, 2012 WL 858406, at *10.

**[\*47]** On brief, petitioner argues that he "ought not to be subject to any accuracy-related penalty" because he "acted in good faith reliance on the advice of a enrolled agent and qualified tax return preparer, and made reasonable and good faith efforts to assess his proper tax liability." He then seems to direct us to his arguments made with respect to satisfaction of section 301.9100-3(b), Proced. & Admin. Regs., and thus his entitlement to a reasonable extension of time under section 301.9100-1, Proced. & Admin. Regs., to make a section 1045 election. From what we can discern, the relevant arguments are that he: (1) hired Mr. Afshar to prepare his tax returns for the years in issue on the advice of other MacroPore cofounders who already employed him as their accountant, (2) provided to Mr. Afshar information from a computer program in which he recorded his income and expenditures, and information relating to the MacroPore stock sales, and (3) told Mr. Afshar that he "sought to defer or roll over gains" from the MacroPore stock sales and assumed that Mr. Afshar knew the proper procedures for doing so because he served as accountant to both MacroPore and Mr. Calhoun.

We find that petitioner failed to act with reasonable cause and in good faith with respect to the unreported gain for 2000, 2001, and 2002, and the Schedule D

**[\*48]** loss for 2002.  Petitioner produced no evidence that Mr. Afshar was a competent tax adviser with sufficient expertise to justify his reliance.  Petitioner also produced no evidence that he provided to Mr. Afshar pertinent details underlying the disputed tax items.  He testified that he provided to Mr. Afshar "pages from Microsoft Money", a computer program used to maintain his income and expenditures, Forms 1099 issued by Charles Schwab listing that year's amount of MacroPore stock sale proceeds, and Charles Schwab account statements reflecting sales of that year's MacroPore stock.  In support of his testimony, he produced what appear to be incomplete copies of monthly Charles Schwab account statements[18] for four statement periods in 2001 and five statement periods in 2002.  He did not explain the absence of the 2000 account statements or the missing monthly statements for 2001 and 2002.

His failure to explain those absences does not matter, however, because there is no evidence that he actually supplied Mr. Afshar with the documents he did produce or with any other pertinent information with which to properly prepare his tax returns.  Petitioner did not call Mr. Afshar as a witness to testify, and "[t]he failure of a party to call such available witnesses that purportedly have

---

[18]The Charles Schwab account statements list, among other things, trade dates, quantities, and unit prices of various stock and bond fund activities.

[*49] knowledge about relevant facts provides sufficient basis to infer that the testimony of such witnesses would not have been favorable to the party." Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989). The record contains an affidavit executed by Mr. Afshar, attached to the section 9100 relief request, which states that, in years ended December 31, 2003, 2004, and 2006, petitioner "delivered to me Forms 1099-B issued by Charles Schwab & Co. relative to transactions in the MacroPore stock." The affidavit does not, however, indicate what, if any, documents were provided for preparation of his 2000-02 tax returns. In addition, neither at trial nor on brief did petitioner assert that he provided to Mr. Afshar information relating to the Charles Schwab stock trades, which resulted in the claimed 2002 long-term capital loss.

We further find that petitioner did not fully inform Mr. Afshar of his LeonardoMD stock purchases in 2002, 2003, and 2004, a critical aspect underlying the alleged tax treatment of the MacroPore stock sale proceeds. The above-referenced affidavit states: "In my capacity as tax return preparer for LeonardoMD, I was aware that * * * [petitioner] had reinvested the proceeds of such sales in the stock of LeonardoMD." The affidavit does not state that petitioner supplied him with this information to ensure accurate tax preparation; rather, it

[*50] implies that he left Mr. Afshar to learn of the LeonardoMD transactions by chance through his role as accountant for LeonardoMD.

In addition, petitioner has not proved that he received or relied upon Mr. Afshar's advice with respect to the tax treatment of the gain and Schedule D loss at issue herein. In order to constitute "advice" under section 1.6664-4(c)(2), Income Tax Regs., the communication must reflect the adviser's "analysis or conclusion." Woodsum v. Commissioner, 136 T.C. at 593 ("The taxpayer must show * * * that he 'relied in good faith on the adviser's judgment.'") (quoting Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99). There is no evidence that petitioner sought or received advice from Mr. Afshar concerning the appropriateness of deferring gain realized from the MacroPore sales, the amount of gain eligible for such deferral, or the propriety of claiming a long-term capital loss for 2002. Further, he presented no evidence indicating that Mr. Afshar exercised "judgment" when preparing his tax returns for 2000, 2001, and 2002. The mere fact that an accountant prepared a tax return does not mean that he "opined on any or all of the items reported therein." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 100.

Petitioner contends that he "made reasonable and good faith efforts to assess his proper tax liability" with respect to the disputed tax items. He, however,

**[*51]** produced no evidence in support of that contention, and we find none in the record. Petitioner is highly educated and intelligent and a successful businessman who has cofounded at least two corporations. With respect to the MacroPore sale proceeds, he declined to make inquiries after his discussion with Mr. Calhoun as to the accuracy of Mr. Calhoun's statement concerning their tax treatment. He chose instead to "assume[] that it was true that * * * [he] could-- * * * [he] could roll this over". He testified that, on the basis of information from Mr. Calhoun, unfamiliar himself with tax law, he told Mr. Afshar that he wanted to defer recognition of the realized MacroPore gain and assumed that he "knew how to do that." As stated supra, petitioner's reliance on Mr. Afshar was unreasonable, and we are unpersuaded that petitioner otherwise made a good-faith effort to determine the correctness of his tax positions.

Petitioner failed to carry his burden of proving that he acted with reasonable cause and in good faith with respect to the unreported gain for 2000, 2001, and2002 and the Schedule D loss for 2002. Accordingly, we find petitioner is liable for the section 6662(a) penalty as applied to the underpayments of tax determined herein for 2000, 2001, and 2002.

[*52] IV.  Application of the Section 6651(a)(1) Addition to Tax for Failure
To Timely File

Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a return on the date prescribed unless he establishes that such failure is due to reasonable cause and not due to willful neglect.  The amount of the addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof "during which such failure continues, not exceeding 25% in the aggregate".  Id.

The Commissioner bears the same burden of production for the section 6651(a)(1) addition to tax as for the section 6662(a) accuracy-related penalty.  See sec. 7491(c).  He thus satisfies his burden of production by producing evidence regarding the appropriateness of imposing the addition to tax.  See Higbee v. Commissioner, 116 T.C. at 446; Bell v. Commissioner, T.C. Memo. 2011-296, 2011 WL 6440294, at *4.  The taxpayer then bears the burden of proving that the late filing was due to reasonable cause and not willful neglect.  See Higbee v. Commissioner, 116 T.C. at 447; Bell v. Commissioner, 2011 WL 6440294, at *4.

The parties stipulated that petitioner failed to timely file his 2000 Form 1040. Respondent has, therefore, satisfied his burden of production.  Petitioner made no argument at trial or on brief that his failure to timely file the return was due to

**[\*53]** reasonable cause and not willful negligent.  We, therefore, hold that petitioner is liable for the section 6651(a)(1) addition to tax for taxable year 2000.

V.    Conclusion

Petitioner is liable for the deficiencies, penalties, and additions to tax as redetermined herein.

Decision will be entered under

Rule 155.